George T. Mulholland
vs.                     No. 78157.
U. S. Oil Co.

February 2, 1931.

BLODGETT, P. J. Heard without the intervention of a jury.

Action to recover damages alleged to have been caused by negligence of defendant in setting fire to premises occupied by plaintiff and used by him for the manufacture of mattresses.

The declaration consists of two counts.

The first count alleges defendant to be carrying on an oil and grease business, and that in furtherance of the business it kept and maintained upon

its premises, which premises adjoined those of plaintiff, a fire, and it then and there became and was the duty of defendant to use due and reasonable care in the control of said fire so that same would not be communicated to the property of others. Yet the said defendant, unmindful of its duty as aforesaid, so carelessly conducted itself in the control of said fire that said fire was permitted to escape from the defendant's control and was communicated to the property of plaintiff and caused great damage, and that said negligence was the sole cause of injury to plaintiff.

The second count alleges it to be the duty of defendant to keep said fire upon its own premises and extinguish the same so that said fire, should said fire escape, would not injure the property of others. And that said defendant so negligently conducted itself in the premises that said fire escaped. And lfurther alleges that defendant neglected to use due care in the extinguishing of said fire and permitted same to spread and injure property of plaintiff.

To this third amended declaration filed a demurrer which was overruled but no rescript filed.

This is a roundabout way of stating that a fire started in premises of defendant, that it was the duty of defendant to keep said fire on its own premises and to extinguish the same, and that the negligence of defendant consists in failure to extinguish the fire, and the causing it to spread into the property of plaintiff.

There is no allegation in the declaration of any negligent act on part of defendant which started said fire, and no testimony of record that same started through negligence of defendant. There is no evidence of any delay on part of defendant in causing an alarm to be rung to summon the fire department.

The property was situated on South Water street. The fire started about half past seven in the morning. Captain Martin, of the Providence Fire Department, testified a still alarm of the fire was received at the fire station at 7:32 A. M.; that he proceeded immediately to the location and took charge of the fire between the second and third floors on South Water Street side; that the first alarm came in six or seven minutes after the still alarm.

Captain Lawton of the fire department testified that he was located on the roof of a one story building located between the property of the defendant and the building occupied by the plaintiff. On the roof of this one story building defendant had erected, without a permit therefor from the City of Providence, a small wooden building into which a belt was run from the main plant to rotate a large pulley by which means power was supplied to other parts of the plant.

Plaintiff claims that the fire was communicated by this building so placed contrary to law by the defendant.

Various photographs of the two buildings taken after the fire were submitted.

Defendant's Exhibit B shows the building of the defendant at the corner of James and South Water street, and in the rear the building occupied by plaintiff. From the photograph it would seem that the damage to defendant's building was to a great extent upon the upper stories and the front on James street. Plaintiff occupied the upper floor of the building in the rear.

Deft's. Ex. A shows the building (Earle Bldg.) occupied by plaintiff and a section of the one story building lying between buildings of plaintiff and defendant.

Deft's. Ex. C shows more in detail sections of the two buildings and the

one story structure between the two, and also shows part of the "pent house," so called, built by defendant upon the flat roof of the one story building.

Deft's. Ex. D shows this pent house with the pulley as same appeared after the fire.

Deft's. Ex. E shows the upper wooden story of defendant's building burned away.

Plff's. Ex. 1 shows the charred remains of the "pent house."

Plff.'s Ex. 2 shows the wall of defendant's building on the right and the wall of plaintiff's building on the left, and the remains of the "pent house."

Plff's. Ex. 3 shows the wall of defendant's buildings and the windows through which the fire entered the building of plaintiff, and on the right the remnants of the "pent house" with the pulley in place.

Deft's. Ex. F shows the record of the alarms sent in, being a still alarm which came by telephone at 7:33 a. m., a call to Box 87 at 7:40 a. m., a second alarm at 7:45 a. m., a third alarm at 7:50 a. m., and the recall at 4 p. m.

This record shows the fire to have been a serious one.

As to the manner in which the fire was communicated to the Earle Building, the upper story of which was occupied by plaintiff there is a wide divergence of testimony. There is no question in the mind of the Court that the alarm was promptly given and promptly responded to by the fire department. There is no question of negligence of defendant in this respect.

In fact, the sole cause of negligence alleged by plaintiff and attempted to be supported by the evidence is the unlawful building of this "pent house" on the flat roof between the two structures, and that the fire was communicated to the premises of plaintiff by this structure, and by no other cause.

Plaintiff testified, and three of his employees support him, that the "pent house" was built of wood and covered with tar paper; that the fire started in building of defendant about 7:40 a. m.; that about twenty minutes after the fire started the "pent house" caught fire and was spread to building of plaintiff directly from the "pent house" through windows in building of plaintiff; that said "pent house" was placed there two years before the fire occurred.

There was further testimony showing that defendant never got a permit from the city authorities to construct the same, and did not meet the requirements of the ordinances of the city of Providence.

Except as to the damages caused, this concluded the plaintiff's case.

Stephen G. Lawton, a captain of the fire department of Providence, testified that he responded to the first alarm and was located on this flat roof of the one story structure between the two buildings; that he remained on duty there in charge until shortly after 9 a. m.; that there were two oil tanks on top of this flat roof and the "pent house;" that the flames came from the third and fourth stories of building of defendant and, rushing across this flat roof, entered the windows of the building occupied by plaintiff; that his duty was to pour water upon said tanks and said roof; that while he was there the "pent house" was not on fire.

Thus his testimony was that up to 9 a. m. the "pent house" was not on fire.

It would appear from this testimony, as plaintiff testifies that the fire entered his premises twenty minutes after same started in defendant's building, which would make the time about 8 a. m., that such fire was not spread by the "pent house" but by flames from the upper stories of build-

ing of defendant shooting over the flat roof of the one story building.

Merle E. Martin, a captain of the Providence Fire Department, responded to the still alarm at 7:33 a. m., and was in charge of the fire between the second and third floors of defendant's building on South Water street. He testified he sent in an alarm six or seven minutes after the still alarm; that the fire spread rapidly over the whole building.

Joseph F. MacDonald, a captain of the said department, testified that he responded to the first alarm; that he looked the fire over from James street and sent in a second alarm; that the fire had not then gone out of defendant's building; that he saw the south and west sides of said building; that the wind was slightly east; that the two buildings were close together and that he saw flames shooting from the top of defendant's building over said flat roof.

It was further testified by plaintiff that the one story building was 18 feet wide and that the firemen came into his premises about 8 a. m.

If the Court believes the account given by plaintiff there is no doubt that plaintiff should recover, as the "pent house" might be termed the proximate cause of the spreading of the fire, and the "pent house" was apparently improperly there. It is alleged to be the sole proximate cause.

Under the case of *Aldrich* vs. *Howard*, 7 R. I. 199, there would seem to be negligence in the building of this "pent house."

The testimony of witnesses for defendant, however, is a direct contradiction as to the proximate cause of the fire spreading to the premises of plaintiff.

The burden of proof is upon plaintiff to support his allegation that the "pent house," constructed as it was and where it was, was the sole proxi-

mate cause of the spread of the fire. The fire was communicated to the premises of plaintiff within a short time, some twenty minutes, after it appeared on the side of the building of defendant. During this time plaintiff and his employees were busy removing articles upon his premises. They are interested witnesses, and it is a natural tendency for a witness to see what he desires to see. The Court believes they were telling the story as they saw it, but that they were mistaken, partly owing to the fact that they were busy removing articles to a safer location.

The Court can not disregard the testimony of the firemen who were located where they could see the course of the fire, and remained there, and must be regarded as disinterested witnesses.

Decision for defendant.

For plaintiff: George J. West.

For defendant: Philip C. Joslin.